UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


WILLIAM MEEKINS,                :
                                      :
         Plaintiff           :
                                        :
     v.                      :  CIVIL NO. 3:CV-06-0290
                                        :
JEFFERY BEARD, et al.,         :  (Judge Kosik)
                                        :
         Defendants     :


# M E M O R A N D U M

_____William Meekins is currently an inmate confined in the Special Management

Unit ("SMU") at the State Correctional Institution at Camp Hill, Pennsylvania ("SCI-

Camp Hill"). He filed this civil rights action pursuant to 42 U.S.C. § 1983 on

February 8, 2006. The matter proceeds on an amended complaint filed on March 23,

2006 (Doc. 7). Named as defendants are Jeffery Beard, Secretary of the Department

of Corrections, and seven (7) employees of the DOC, some employed at SCI-Camp

Hill.[1] In the complaint Plaintiff alleges that he was arbitrarily transferred to the SMU

without due process of law and that his transfer was in retaliation for separate

litigation he previously filed in this court. He also contends that he was denied

---

[1] Three John Doe defendants also presently appear on the docket sheet. In the
original complaint John Doe #1-#3 were listed as defendants. This matter now
proceeds on an amended complaint (Doc. 7) wherein the Doe defendants have been
identified. As such, the Clerk of Court will be directed to remove the reference to
Doe defendants from the docket.

adequate medical care in violation of the Eighth Amendment.  As relief, he seeks declaratory, injunctive and monetary relief.  Presently pending is Defendants' motion to dismiss (Doc. 19) and motion to stay discovery (Doc. 22), as well as Plaintiff's motion to compel discovery (Doc. 24), motion for decisions with regard to outstanding motions (Docs. 36, 39, 43) and motions for enlargement of time to respond to any filings due on his part (Docs. 37, 41).

## I.    Allegations in the Complaint

Plaintiff alleges that on November 16, 2005, he was transferred from the State Correctional Institution at Waymart to the SMU at SCI-Camp Hill.  He claims that this transfer was in retaliation for his filing of a previous lawsuit in this court and, as such, in violation of his First Amendment rights.[2]  He further contends that the transfer occurred without first affording him due process of law as required by the Fourteenth Amendment and DC-ADM 802-2.  According to Plaintiff, prior to placement in the SMU he is entitled to notice and a hearing which he claims were never provided to him.  Plaintiff does state that he was seen on four (4) occasions by the Program Review Committee (Defendants Nish, Delrosso and Klopotoski), but was never provided with notice and reasons for the placement in the SMU or an opportunity to respond to the transfer.

---

[2] The lawsuit to which Plaintiff refers is Meekins v. Colleran, et al., Civil Action No. 3:05-CV-1394 (M.D. Pa.), filed July 12, 2005.

Plaintiff contends that he was seen by Defendants Southers and Chambers on November 22, 2005, and that although he informed them of his arbitrary placement in the SMU, they ignored him.  Thereafter, on November 26, 2005, Plaintiff pursued the matter through the prison's inmate grievance system - grievance #137071.  He was unsuccessful and thereafter appealed to Superintendent Kelchner, who found the grievance to be without merit.  A final level appeal to the Secretary's Office of Inmate Grievances and Appeals was ultimately dismissed on April 6, 2006.

Plaintiff argues that being housed in the SMU deprives him of being considered for parole, release into mainstream prison population and educational programs.  He also challenges the conditions to which he is subjected while confined in the SMU and claims staff retaliate against him and deprive him of medical care for a severe condition he became infected with while at SCI-Waymart, as well as dental care for seven (7) "carious lesions".  (Doc. 1, Compl. at 9.)

## II.   **Defendants' Motion to Dismiss**

Defendants have filed a motion to dismiss the complaint advancing three (3) arguments.  The first argument is that Defendants Delrosso, Nish and Klopotoski should be dismissed because Plaintiff did not name them in his inmate grievance as required under the Prison Litigation Reform Act ("PLRA").  They next argue that Plaintiff's complaint should be dismissed to the extent he seeks money damages against Defendants in their official capacities.  Finally, Defendants maintain that

Plaintiff's due process claim is subject to dismissal because the SMU at SCI-Camp Hill does not constitute an atypical and significant hardship.[3]  Defendants do not appear to address Plaintiff's medical and retaliation claim in their motion.

A motion to dismiss should not be granted if "under any reasonable reading of the pleadings, the plaintiff [ ] may be entitled to relief. . . ."  <u>Langford v. City of Atlantic City</u>, 235 F.3d 845, 847 (3d Cir. 2000).  In making that decision, a court must accept as true all well-pleaded allegations in the complaint, <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 481-82 (3d Cir. 2000), and construe any reasonable inferences to be drawn from them in the plaintiff's favor.  <u>See</u> <u>United States v. Occidental Chemical Corp.</u>, 200 F.3d 143, 147 (3d Cir. 1999).  Consequently, the Court need not accept "bald assertions" or "legal conclusions."  <u>Morse v. Lower Merion School District</u>, 132 F.3d 902, 906 (3d Cir. 1997).  Likewise, the Court need not "conjure up unpled allegations or contrive elaborately arcane scripts" in order to breathe life into an

---

[3] Defendants label their filing as a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  In the "Wherefore" clause of the motion Defendants request that the complaint be dismissed with prejudice, or alternatively summary judgment be entered in favor of the Defendants.  Along with their motion to dismiss Defendants submit a supporting brief and an Appendix to the motion which consists of the declaration of Tracy Pollock, Assistant to the Chief Grievance Coordinator of the DOC.  Attached to the declaration are copies of documents addressing the exhaustion issue.

Defendants' motion will be considered by the court solely as a motion to dismiss in that Plaintiff has not been adequately put on notice that the motion might be addressed as a summary judgment motion, and because Defendants' motion fails to comply with the Middle District of Pennsylvania Local Rules of Court with regard to the requirements of filing a motion for summary judgment.

otherwise defective complaint.  <u>Gooley v. Mobil Oil Corp.</u>, 851 F.2d 513, 514 (1st

Cir. 1988).  A district court should provide leave to amend "when amendment could

cure the deficiency and would not be inequitable."  <u>Grayson v. Mayview State

Hospital</u>, 293 F.3d 103, 106 (3d Cir. 2002).  A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover, however, is

properly dismissed without leave to amend. <u>Id</u>.

The court will first address the exhaustion issue and deny the motion with

regard to this ground for the following reasons.  Defendants argue that Plaintiff has

failed to exhaust his administrative remedies with regard to Defendants Nish,

Delrosso and Klopotoski because these defendants were not named in the inmate

grievance filed by Plaintiff as required by the PLRA.  In support of their argument,

Defendants attach the supporting declaration of Tracy Pollock, Administrative Office

in the DOC, employed in the Secretary's Office of Inmate Grievances and Appeals.

In her position, Pollock assists the Chief Grievance Coordinator.  (Doc. 21, Pollock

Declar.)  Attached as exhibits are copies of the grievance and appeals filed by

Plaintiff with regard to his transfer from SCI-Waymart to the SMU at SCI-Camp

Hill.[4]

---

[4]  Pollock's declaration addresses the issue of whether Plaintiff has exhausted
his administrative remedies with regard to the issue of his transfer from SCI-Waymart
to the SMU at Camp Hill. The supporting exhibits consist of the only grievance
Plaintiff filed along with copies of the responses and appeals relating thereto.
Because Plaintiff himself states in his amended complaint that he has exhausted his

To the extent Defendants maintain that the PLRA requires that all defendants sued in this action be named in the grievance, the motion to dismiss is denied.  It has recently been held by the United States Supreme Court that exhaustion under the PLRA is not per se inadequate simply because an individual named in the complaint was not named in previous administrative grievances.  See Jones v. Bock, ___ U.S. ___, 127 S.Ct. 910, 923 (2007).[5]  The determination as to the sufficiency of the exhaustion in such cases is left to the District Court.  Id.  It is this court's finding that after reviewing the exhibits submitted by Defendants, exhaustion was sufficient with regard to Defendants Nish, Delrosso and Klopotoski.  Plaintiff's official inmate grievance #137071 specifically states that he is filing the grievance regarding the SMU transfer/due process issue against Beard, Shaffer, Kelchner, Southers, Chambers ". . . and John Doe 1, 2, 3 . . . ."  (Doc. 21, Ex. A.) When Plaintiff filed this civil rights action he listed the Defendants in the action in the same manner.  When he filed his amended complaint he identified the Doe defendants as Nish, Delrosso and Klopotoski.  In reviewing the content of the grievance, it is logical that the Does

_____

claims and in his brief in opposition to Defendants' motion to dismiss does not dispute the authenticity of the documents submitted by Defendants, it is proper for this court to consider the documents without the necessity of converting the motion into a motion for summary judgment.  See Pension Benefit Guar. Corp. v. White Consol. Induc. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.")

[5] The court recognizes that Defendants' motion to dismiss was filed several months before the Jones case was decided by the Supreme Court.

referred to therein were Nish, Delrosso and Klopotoski as they were the members of

the PRC and an integral part of the events concerning the SMU transfer.

Accordingly, the court finds that the SMU transfer issue was exhausted with regard to

these three defendants and the motion to dismiss said defendants on this basis will be

denied.

Defendants next seek dismissal of all claims contained in the complaint for

money damages set forth against Defendants in their official capacities. The court

agrees that any such claims are subject to dismissal. Unless consented to by the state,

the Eleventh Amendment prevents suits from being brought in federal court against a

state or one of its agencies or departments for money damages. Pennhurst v.

Halderman, 465 U.S. 89, 99-100 (1984). A suit brought against an individual acting

in his or her official capacity is similarly deemed to be a suit against the state, and as

such, barred by the Eleventh Amendment. See Will v. Michigan Dept. of State Police,

491 U.S. 58, 71 (1989).

The final ground advanced by Defendants in their motion is that Plaintiff's due

process claim should be dismissed because the conditions in SCI-Camp Hill's SMU

do not constitute an atypical and significant hardship.  This court has repeatedly

found no liberty interest with respect to claims that due process rights have been

violated by not giving an inmate a hearing prior to placement in the SMU upon

transfer to SCI-Camp Hill.  See Spencer v. Kelchner, Civ. No. 3:06-1099, 2007 WL

88084 slip op. at *10-*12 (M.D. Pa. Jan. 9, 2007)(Kosik, J.); <u>Francis v. Dodrill</u>, 2005 WL 2216582 (M.D. Pa., Sept. 12, 2005); <u>Stotts v. Dodrill</u>, Civil No. 04-0043 (M.D. Pa., Feb. 7, 2005).  In these cases, the court has found that an inmate's placement in the SMU does not implicate his due process rights.  In their motion to dismiss, Defendants also argue that Plaintiff's due process rights were not implicated as his confinement in the SMU does not constitute an atypical and significant hardship.

A due process liberty interest "in avoiding particular conditions of confinement may arise from state policies or regulations."  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 222 (2005).  The Due Process Clause protects a prisoner's right to "freedom from restraint, which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship in relation to the ordinary incidents of prison life."  <u>Id</u>. at 2394 (quoting <u>Sandin v. Connor</u>, 515 U.S. 472 (1995).

The proper focus for determining whether prison conditions give rise to a due process liberty interest is the nature of the conditions, not mandatory language in prison regulations.  <u>Sandin</u>, 515 U.S. at 484.  In <u>Sandin</u>, an inmate was charged with violating prison regulations.  <u>Id</u>. at 475.  At a hearing, the hearing committee refused the inmate's request to present witnesses.  <u>Id</u>. The committee found the inmate guilty and sentenced him to disciplinary segregation.  <u>Id</u>. The inmate sought review, and a deputy administrator found some of the charges unfounded and expunged his

disciplinary record. Id. at 476. Thereafter, the inmate filed suit pursuant to § 1983 for a deprivation of procedural due process during the disciplinary hearing. Id. The Tenth Circuit found that he had a protected liberty interest because it interpreted the prison regulations to require that the committee find substantial evidence of misconduct before imposing segregation. Id. at 477. The Supreme Court reversed, finding no liberty interest. Id. at 484. In doing so, it rejected an approach that focused on whether the prison regulations "went beyond issuing mere procedural guidelines and has used 'language of an unmistakenly mandatory character' such that the incursion on liberty would not occur 'absent specified substantive predicates.'" Id. at 480 (quoting Hewitt v. Helms, 459 US 460, 471-72 (1983)). The Court found this approach undesirable because it created a disincentive for prison administrators to codify prison management procedures and because it "led to the involvement of federal courts in the day-to-day management of prisons, often squandering judicial resources with little offsetting benefit to anyone." Id at 482. Thus, the Court held liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. In applying this test, the Court observed, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the

sentence imposed by a court of law." Id. at 485.  The Court then found that the

inmate's disciplinary segregation "did not present a dramatic departure from the basic

conditions of Conner's indeterminate sentence" because of the conditions of

disciplinary segregation were similar to those faced in administrative and protective

custody.  Id. at 486.

In Wilkinson v. Austin, 545 U.S. 209, ___, 125 S.Ct. 2384, 2393, 162 L.Ed.2d

174 (2005), the Court applied the Sandin test and found that the plaintiff's due

process rights were implicated when he was placed in a program where:

> almost all human contact is prohibited, even to the point that
> conversation is not permitted from cell to cell; the light,
> though it may be dimmed, is on for 24 hours; exercise is for
> 1 hour per day, abut only in a small indoor room ...
> [P]lacement ... is indefinite and, after an initial 30 day
> review, is reviewed just annually .... [P]lacement
> disqualifies an otherwise eligible inmate for parole
> consideration.

Id. at 2394-95.  The Court found these harsh conditions "give rise to a liberty interest

in their avoidance."  Id. at 2395.  Fraise v. Terhune, 283 F.2d 506 (3d Cir. 2002)

applied the Sandin test and found that avoiding placement in the Security Threat

Group Management Unit (STGMU) in the New Jersey prison system is not a

protected liberty interest.  Inmates who the prison deemed members of groups that

posed a security threat were placed in the STGMU.  Id. at 509.  "An inmate assigned

to the STGMU remains in maximum custody until the inmate successfully completes

a three-phase behavior modification program."  Id. at 511. The Court found that

10

despite the additional restrictions, prisoners have no liberty interest in avoiding

placement in the STGMU.  Id.; see also Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir.

1997)(finding that additional restrictions in administrative custody for a period of

fifteen months does not deprive prisons of protected liberty interest).

At the time Plaintiff filed this action, he was confined in the SMU a little under

three (3) months.  He has now been in the SMU approximately 15½ months, slightly

longer than the Plaintiff in Griffin.  However, in opposing Defendants' motion to

dismiss Plaintiff argues that the conditions in the SMU do impose atypical and

significant hardship in relation to the ordinary incidents of prison life.  Among the

conditions he cites are the deprivation of nutritious meals, loss of access to

communication with loved ones, and the denial of exercise period for months.  He

also states that he is subjected to "sexual harassment through food and homosexual

officers."  (Doc. 32 at unnumbered p. 6.)  In his complaint, he claims that due to his

confinement in the SMU, he is deprived of the opportunity to be considered for

parole.

The conditions alleged by Plaintiff do not rise to the severity of those set forth

in the Wilkinson case which were found to give rise to a protected liberty interest.

However, out of an abundance of caution and without passing judgment as to the

ultimate merit of Plaintiff's due process claim, the court will allow this issue to

proceed to a summary judgment motion should Defendants choose to file one.

Accordingly, the motion to dismiss will be granted to the extent that all claims set forth against Defendants in their official capacities for monetary damages will be dismissed.  The motion will be denied in all other respects.

### III.   Remaining Pending Motions

#### A.   Plaintiff's Motions for Decision/Judgment on Motion to Dismiss

Plaintiff has filed three (3) motions requesting the court to decide Defendants' motion to dismiss.  (Docs. 36, 39 and 43.)  As the motion to dismiss has now been considered and ruled upon, Plaintiff's outstanding motions will be denied as moot.

#### B.   Plaintiff's Motions for Extension of Time

On November 6, 2006 and November 21, 2006, Plaintiff submitted general motions for enlargements of time with regard to any filings which might be due to be filed on his part.  (Docs. 37, 41.)  Plaintiff filed the motions because he thought there existed a possibility he may receive a medical placement or be placed on suicide observation.  Plaintiff's motions will be denied without prejudice at this time in that there are currently no filings due by Plaintiff.

#### C.   Defendants' Motion to Stay Discovery

Defendants have moved for the stay of discovery pending decision by the court on their motion to dismiss (Doc. 22).  Because the motion has now been denied in part, and the case will move forward, the motion for stay will be denied.

**D.     Plaintiff's Motion to Compel Discovery**

Plaintiff filed a motion to compel discovery on July 3, 2006, against

Defendants Southers, Delrosso, Beard and Schaffer whom he claims failed to answer

interrogatories served upon them on or about May 21, 2006.  (Doc. 24.) According to

Plaintiff, Defendants have also failed to respond to a request for the production of

documents.  Defendants have opposed the motion on the basis that they have sought a

stay of discovery pending resolution by the court of their motion to dismiss the

complaint.  In light of the fact that the motion to dismiss has now been ruled upon,

the motion to compel will be granted to the extent that Defendants shall respond to

the outstanding discovery requests within thirty (30) days.

An appropriate Order is attached.

UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| WILLIAM MEEKINS, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-06-0290 |
| | : | |
| JEFFREY BEARD, <u>et</u> <u>al</u>., | : | (Judge Kosik) |
| | : | |
| Defendants | : | |


## <u>ORDER</u>

**NOW, THIS 1ˢᵗ DAY OF MARCH, 2007,** in accordance with the

accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. The Clerk of Court is directed to remove the reference on the docket to the Defendants listed as "John Doe #1-#3".

2. Defendants' motion to dismiss (Doc. 19) is granted with respect to all claims set forth against Defendants in their official capacities for monetary damages.  The motion is denied in all other respects.

3. Defendants' motion to stay discovery (Doc. 22) is denied.

4. Plaintiff's motions for a decision on Defendants' motion to dismiss (Docs. 36, 39, 43) are denied as moot.

5. Plaintiff's motions for extension of time (Docs. 37, 41) are denied without prejudice.

6.      Plaintiff's motion to compel discovery (Doc. 24) is granted to the extent that Defendants are directed to respond to Plaintiff's outstanding discovery requests within thirty (30) days.

7.      All discovery in this case is to be completed by the parties within sixty (60) days from the date of this Order.  Any dispositive motions shall be filed within thirty (30) days from the close of discovery.


s/Edwin M. Kosik
United States District Judge