UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM MEEKINS,                      :
                                      :
        Plaintiff                     :
                                      :
   v.                                 :      CIVIL NO. 3:CV-06-290
                                      :
JEFFERY BEARD, et al.,                :      (Judge Kosik)
                                      :
        Defendants                    :

## MEMORANDUM

This 42 U.S.C. § 1983 civil rights matter is before the court on cross-motions for summary judgment filed by the parties. Plaintiff is William Meekins, an inmate currently confined in the Special Management Unit ("SMU") at the State Correctional Institution at Camp Hill, Pennsylvania. Defendants are Department of Corrections officials Jeffery A. Beard and John Shaffer, as well as DOC employees at SCI-Camp Hill and SCI-Waymart. The action proceeds on an amended complaint wherein Plaintiff alleges that he was arbitrarily transferred from SCI-Waymart to the SMU at SCI-Camp Hill on November 16, 2005, without due process and in retaliation for separate litigation he previously filed in this court.[1] (Doc. 7.) While the court originally construed the amended complaint to also set forth an inadequate medical/dental care claim, it is clear that Plaintiff raises this issue only in regard to his due process argument, and not

---

[1] The litigation referred to is Meekins v. Colleran, et al., Civil Action No. 05-1394, a civil rights complaint filed on July 12, 2005 pursuant to 42 U.S.C. § 1983.

as a separate claim in this action. This is evidenced by the fact that neither party has addressed the lack of medical/dental care in their motion for summary judgment, as well as the fact that Plaintiff has another action pending in this court wherein the sole issue is his alleged lack of medical/dental care while at SCI-Camp Hill. See Meekins v. Law, et al., Civil No. 3:CV-06-1321.[2] The pending motions for summary judgment are both ripe and will now be addressed by the court.

**I.   Factual Background**

Plaintiff is currently an inmate in the SMU at SCI-Camp Hill. He is currently serving a sentence of 7-20 years. His minimum term expired on January 2, 2007, and he did not become eligible for parole until 2007. (Doc. 99, Pl. Dep. at 49.) He was formerly incarcerated in the Restricted Housing Unit at SCI-Waymart prior to his transfer to the SMU at SCI-Camp Hill on November 16, 2005. At all times relevant to this action, Defendant Beard was the Secretary and Defendant Shaffer the Executive Deputy Secretary of the Pennsylvania DOC. The following Defendants were all SCI-Camp Hill employees: Defendant Kelchner, Superintendent; Defendant Southers, SMU Unit Manager; and Defendant Chambers, SMU Counselor. Employed at SCI-Waymart were Defendant Nish, Superintendent; Defendant Klopotoski, Deputy Superintendent for Facility Management and Defendant DelRosso, Deputy Superintendent for Centralized Services.

---

[2] In his deposition transcript, Plaintiff verifies that he is not pursuing any medical care claim in this lawsuit. (Doc. 99, P Dep. at 43.)

2

While incarcerated at SCI-Waymart, Plaintiff incurred seven (7) misconducts which included charges of threatening an employee or their family, using abusive, inappropriate or obscene language, and refusing to obey an order. (Doc. 99, App. 2, Exs. to Pl. Dep., Ex. 1.)  He was found guilty of the misconducts.  (Id., App. 1, Pl. Dep. at 10-16.) While housed in SCI-Waymart's RHU, Plaintiff's status was reviewed by the Program Review Committee ("PRC") on at least eight occasions. (Id. at 16; App. 2, Ex. 2, PRC Reports; App. 4, DelRosso Decl. ¶ 3.) At times, the PRC was made up of Defendants Nish, DelRosso and Klopotoski. In Plaintiff's November 24, 2004 and February 24, 2005 reviews, the PRC states that the reports from the RHU have been "unsatisfactory" and that Plaintiff "has a poor attitude and resents authority." (Doc. 99, App. 2, PRC Reports; DelRosso Decl. ¶ 4 and Ex. A; Klopotoski Decl. at ¶¶ 3-5.)  Following his review on May 19, 2005, the PRC noted poor reports from the RHU again citing Plaintiff's poor attitude, resentment of authority and argumentative nature.  (Id.) During this PRC review, Plaintiff became loud and belligerent. Following a review on August 11, 2005, the same comments were reported by the PRC, and it was further noted that Plaintiff warned the PRC that "if his situation doesn't change, someone could get hurt." (Id.) Plaintiff does not dispute the poor reports from the RHU staff. (Doc. 99, Pl. Dep. at 19.)

Plaintiff filed a civil rights action in this court captioned <u>Meekins v. Colleran, et al.</u>, Civil Action No. 05-1394, on July 12, 2005, prior to his transfer to the SMU at SCI-Camp Hill. (Id. at 30).

3

Three of the Defendants named in this lawsuit are Defendants Nish, DelRosso and Klopotoski.

On August 23, 2005, it was recommended that Plaintiff be transferred to the SMU at SCI-Camp Hill due to his disruptive behavior and multiple misconducts totaling 630 days Disciplinary Custody time. DelRosso and Klopotoski agreed with the recommendation. (Id., DelRosso Decl. ¶ 5; Klopotoski Decl. ¶ 7.)

Plaintiff was thereafter transferred on November 16, 2005. Prior to this date, his final 90-day PRC review was held on November 9, 2005. (Id., Pl. Dep. Ex. 2.) In the DC-141 Part III form, the PRC is noted as consisting of Defendants DelRosso, Klopotoski and Classification and Program Manager Walsh. The form notes as follows:

> Upon interview with the Program Review Committee, Inmate Meekins stated he had no questions or comments to make. Inmate Meekins was informed that he is on the list to be transferred to the Special Management Unit at SCI Camp Hill. Inmate Meekins has been informed of this fact previously and is aware of the pending transfer. He had no statements to make.

(Doc. 99, Pl. Dep. Ex. 2, 11/9/05 PRC Action; Delrosso Decl. at ¶ 6.)

Defendant Beard issued DOC policy bulletin DC-ADM 802-2 which was effective on July 8, 2005. Under this policy, the PRC was required to review recommendations for transfer to an SMU with the inmate and explain the reasons to him. In addition, the inmate is to be given the opportunity to respond. It is further provided that the recommendation shall be documented on the DC-141-Part 4, with a copy to the Inmate. (Doc. 1, Compl., Ex. DC-ADM 802-02; Doc. 99, DelRosso

4

Decl., Ex B.) There was some delay on the part of the institutions in implementing this policy. (Doc. 99, Delrosso Decl. ¶ 7.)

Prior to the final PRC review at SCI-Waymart, Plaintiff was told by Defendant Klopotoski in 2005, months before the November 9, 2005 review, that if his "behavior did not change that they would send [him] to the SMU." (Id., Pl. Dep. at 24.) Plaintiff further admits that he was never promised by the PRC members that he would return to general population. (Id. at 26.)

The transfer petition from SCI-Waymart to SCI-Camp Hill stated as follows: "The institutional staff and PRC at SCI-Waymart recommend SMU Placement for inmate Meekins due to his overall maladaptive behavior that includes assaultive and threatening misconducts totaling 630 days DC time." (Id., Dep. Ex 3.)

When Plaintiff arrived at SCI-Camp Hill, he met with the SMU Management Team, including SMU Unit Manager Southers and former Counselor Chambers on November 22, 2005. (Id., Pl. Dep. at 32-33.) He was told he would be housed in the SMU, and was given an SMU handbook. He was also informed that he could not be placed in general population because he was a threat to the inmates there. (Id.)

Plaintiff filed a grievance (No. 137071) objecting to the transfer to the SMU. (Id. at 34-35; Dep. Ex. 4.) The response thereto informed Plaintiff that he had been told he was on the transfer list for the SCI-Camp Hill SMU via the November 9, 2005 PRC review and DC-141 part III form, and had responded that he had no questions or comments to make. The grievance was denied finding that Plaintiff had been properly notified of the transfer and given an

5

opportunity to comment. (Id.) On January 17, 2006, Defendant Kelchner rejected Plaintiff's appeal with regard to said grievance. This was the only contact Plaintiff had with Kelchner regarding the transfer issue. (Id., Pl. Dep. at 29, Pl. Dep. Ex. 4.) Plaintiff is unsure if he had any contact with Defendant Beard regarding the transfer issue. However, it is undisputed that Beard did give the final approval for the transfer. (Doc. 99, Shaffer Decl. ¶ 4 and Ex. A.)

Defendant Southers was responsible for the care, custody and control of the inmates in the SMU at SCI-Camp Hill. The SMU is designed to house those inmates with problematic and assaultive behavior. It includes those who may have been subject to repeated disciplinary action in the past. The program is designed to provide each inmate housed there with an opportunity to demonstrate a stable level of behavior with the ultimate goal of being returned to general population. The program consists of 5 phases and advancement is based upon behavior and ability to adjust under levels of reduced supervision. As an inmate progresses through the phases, privileges are increased. (Doc. 99, Southers Decl., ¶¶ 1-4.)

In order to be approved for confinement in the SMU, there must first be a recommendation made by staff from the institution. Pursuant to DOC Policy 6.5.1, the inmate is informed of the recommendation and reasons for transfer. He can then appeal the decision to the Superintendent and DOC Central Office. The DOC Central Office had approved Plaintiff's transfer to the SMU. The Bureau of Inmate Services, SMU facility and DOC's Chief Psychiatrist and/or Psychologist review the transfer petition. The petition is

6

then forwarded to the Regional Deputy Secretary for the sending facility and the Regional Deputy Secretary for the SMU facility for review and approval.  Finally, the petition is usually reviewed and approved by the Executive Deputy Secretary.  (Id., ¶¶ 5,6.)

Shortly after his arrival at the SMU, Plaintiff was seen by the Unit Management Team, which included Defendant Southers.  The program was explained to him and he was provided the SMU Handbook.  (Id., Southers Decl. ¶ 7; Chambers Decl. ¶5.)  Southers also observed his behavior in addition to reviewing his file and history and believed that Plaintiff was appropriately placed in the SMU.  (Id. ¶¶ 7, 8.) When Southers last worked in the SMU, Plaintiff had advanced to Phase 2, the second to last phase of the program.  (Id. ¶9; Pl. Dep. at 9.)

Defendant Shaffer is the DOC Executive Deputy Secretary and has held that position since February of 2003.  He reports to Defendant Beard.  Shaffer was not involved in the decision to transfer Plaintiff to the SMU at SCI-Camp Hill.  He had no part in either recommending or approving the transfer. (Doc. 99, Shaffer Decl. ¶¶ 1-3.)  The recommendation to transfer was approved by individuals in the DOC Central Office and SCI-Camp Hill, and finally approved by Defendant Beard. (Id., ¶ 4.)

**II.  Standard of Review**

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  In considering a summary judgment motion, inferences from the underlying

7

facts must be viewed in the light most favorable to the non-moving party. P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56(c) imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden then shifts to the non-moving party. The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading." Saldana, 260 F.3d at 232. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment. Id. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000). The court may not consider evidence on a motion for summary judgment that would not be admissible at trial. Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999). Summary judgment must be entered in favor of the moving party

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." <u>Matsushita</u>, 475 U.S. at 587 (citations omitted).

**III. Discussion**

    **A.   Due Process with respect to SMU transfer**

In order to determine whether a due process violation has occurred, an initial determination must be made that a protected liberty interest exists and, if so, the next step is to define what process is mandated to protect it. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>Shoats v. Horn</u>, 213 F.3d 140, 143 (3d Cir. 2000). A protected liberty interest may be created by either the Due Process Clause itself or by state law. <u>See</u> <u>Sandin</u>, <u>supra</u>. Due process requirements apply only when the prison officials' actions impose "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 482. Conversely, there can be no due process violation where there is no protected liberty interest.

"[T]he baseline for determining what is 'atypical and significant' - the 'ordinary incidents of prison life' - is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." <u>Griffin v. Vaughn</u>, 112 F.3d 703, 706 (3d Cir. 1997)(<u>quoting</u> <u>Sandin</u>, 515 U.S. at 486). Confinement in administrative or punitive segregation is insufficient, without more, to establish the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest."

9

In Sandin, the United States Supreme Court held that 30 days in disciplinary custody was not an "atypical and significant hardship" for purposes of the Due Process Clause.  In Griffin, the Third Circuit Court of Appeals concluded that fifteen months in administrative custody did not rise to the level of atypical and significant hardship.  In Fraise v. Terhune, 283 F.3d 506 (3d Cir. 2002), confinement in a Security Threat Group Management Unit was at issue.  The court found that although the inmates in said unit faced additional restrictions, confinement there was not atypical and significant so as to implicate the Due Process Clause.  One of the factors considered was that plaintiffs' confinement in the unit did not exceed the sentences imposed upon them or otherwise violate the Constitution.  283 F.3d at 522.

The United States Supreme Court addressed the due process issue with regard to confinement in a Supermax facility in Ohio.  In this case, "atypical and significant hardship" for purposes of the Due Process Clause was found to exist.  Wilkinson v. Austin, 545 U.S. 209, 224 (2005). In reaching this decision, the Court emphasized the fact that inmates in the Supermax facility had minimal human contact, and only had exercise one hour per week in a small indoor room.  Further, placement in this unit was indefinite in duration and reviewed only once per year.

In the instant case, the undisputed facts reveal that confinement in the SMU is not indefinite in duration.  Plaintiff's movement through the required phases is completely within his own control as it is determined by his behavior.  (Doc. 99, Southers Decl., ¶ 9; Pl.

10

Dep. at 9, 47.) Further, status reviews to monitor progress are held for an inmate in the SMU every 30 days. (Doc. 59, Ex. SMU Handbook at 2.) While Plaintiff contends that various conditions within the SMU impose "atypical and significant" hardship in relation to the ordinary incidents of prison life, the undisputed evidentiary materials demonstrate otherwise. While Plaintiff contends that there is little human contact and 24 hour lighting, he himself submits the SMU Handbook wherein it is clear that contact exists - not only in the daily form of contact between inmates and staff/medical personnel, but also with regard to the allowed visiting rules set forth in the Handbook. Even the declarations Plaintiff submits in support of his argument establish that the inmates in the SMU are allowed a minimum of one (1) hour of recreation a day (Doc.1, Spencer Decl.). While a declaration submitted by inmate Carter states that he saw Plaintiff deprived of showers, yard and library access and cleaning materials from January 19, 2006 through February 11, 2006, this only goes to support the fact that Plaintiff usually is not subjected to such deprivations on other days. This is bolstered by the fact that the SMU Handbook submitted by Plaintiff sets forth that showers to SMU inmates are offered 3 times per week and contact with counselors, SMU and medical staff is allowed. While yelling and banging is not permitted, inmates are allowed to talk quietly to other inmates located in the cells on either side of them. (Doc. 1, SMU Handbook, ¶¶ 2, 25, 26, 18, 21.) Further, the SMU Handbook provides for a visiting schedule. (Id., ¶ 5.) While the Handbook does state that

11

a light does stay on at all times in the SMU, it is a nightlight in each cell and is for security purposes.

Plaintiff also points to his denial of parole on December 15, 2006, and claims that confinement in the SMU was the cause, thereby making his confinement an atypical and significant hardship. First, Plaintiff's eligibility for parole consideration has not been adversely affected by his confinement in the SMU. Plaintiff has been considered for parole, as evidenced by the December 15, 2006 denial, and the Parole Board properly may consider his completion of appropriate programs in determining whether to release him. See Shaffer v. Meyers, 338 F. Supp. 2d 562, 566 (M.D. a. 2004), aff'd, 163 Fed. Appx. 111, 113-14 (3d Cir. 2006)(per curiam). Further, the failure to complete prescriptive institutional programs was only one reason given for the parole denial. (Doc. 1, 12/15/06 Notice of Board Decision.) Other reasons for the denial included the negative recommendation made by the DOC, Plaintiff's behavior, including reported misconducts, and his interview.

When Plaintiff filed this action, he was confined in the SMU for approximately 20 months, not much more than the time at issue in Griffin. Further, his confinement does not exceed his maximum. It is within Plaintiff's control as to how quickly he moves through the SMU phases. Further, with each phase, he is afforded more privileges. Plaintiff has progressed to Phase 2, the next to last phase where, according to the SMU Handbook he submits as an exhibit, he is permitted out of his cell without restraints individually or in small groups. He also is able to participate in group counseling, small

12

group yard activities, and educational classes. (Doc. 1, SMU Handbook at 2.)  Based on the foregoing, no genuine issue of material fact exists that prevents a finding that the SMU does not constitute an atypical and significant hardship for purposes of the Due Process Clause.

Even if the Due Process Clause applied in this case, the undisputed facts demonstrate that Plaintiff received adequate notice of his transfer to the SMU. While the parties agree that DC 802-2 went into effect prior to Plaintiff's transfer to the SMU and required the DC 141 Part 4 form, this does not create a disputed issue of material fact preventing a finding that Plaintiff was provided with adequate notice of his transfer.  It is well recognized that the failure to comply with prison policies and regulations does not amount to a Constitutional violation. See Rowe v. Fauver, 533 F. Supp. 1239, 1246 n. 10 9D.N.J. 1982); Priest v. Gudmanson, 902 F. Supp. 844, 845-46 (E.D. Wis. 1995).

The purpose of the policy is to ensure that an inmate has notice of his transfer and an opportunity to challenge the transfer.  The undisputed facts in this case clearly demonstrate that Plaintiff had both.  First, in his deposition Plaintiff states that in his PRC reviews while at SCI-Waymart, he was talked to about his behavior in the RHU.  He was told over and over again about his bad attitude and argumentative nature with the RHU staff, and that if his attitude did not change he would be transferred to the SMU.  (Doc. 99, Pl. Dep. at 19.)  He admits that a few months prior to the November 9, 2005 PRC he was told that he was on a list to go to the SMU.  (Id. at 24.)

13

Further, there is no dispute that on November 9, 2005, the PRC met with Plaintiff and informed him that he was on the list to be transferred to the SMU at SCI-Camp Hill. In response, he had no statements to make. (Id., Pl. Dep. Ex. 2, 11/9/05 PRC Action; Klopotoski Decl. ¶ 6, DelRosso Decl. ¶ 6.) Thus, he had opportunity to respond to the transfer, and chose not to do so. Further, the record establishes that he did challenge the transfer through the grievance system. (Id., Pl. Dep. at 34-35; Pl. Dep. Ex. 4.) Based on the foregoing, no material issues of fact exist which prevents the grant of summary judgment in favor of Defendants with respect to Plaintiff's Due Process claim.

### B. Retaliation Claim

Plaintiff also contends that his transfer to the SMU was in retaliation for the federal lawsuit he previously filed in this court. The First Amendment to the United States Constitution protects an individual's right "to petition the Government for a redress of grievances." U.S. Const. Am. I. The amendment, however, provides protection beyond proscribing the abridgment of an individual's right to petition the government; it also prohibits the government from retaliating against an individual who has elected to exercise his or her constitutional rights. See, e.g., Rankin v. McPherson, 483 U.S. 378, 383-84 (1987); Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006).

In Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001), the Court of Appeals for the Third Circuit set forth the elements of a prisoner's claim for retaliation. "As a threshold matter, a prisoner-

14

plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." Id. at 333. In this matter, Plaintiff contends that he was subject to a retaliatory transfer because he filed a federal civil rights lawsuit. The filing of a lawsuit and administrative grievances is constitutionally protected conduct. See Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003); Allah v. Seiverling, 229 F.3d 220, 224 (3d Cir. 2000); Branch v. Russian, No. Civ. A. 1:00-CV-1728, 2005 WL 1137879, at *6 (M.D. Pa. Feb. 1, 2005). There is no dispute of fact that Plaintiff engaged in constitutionally protected conduct. Accordingly, the first element of retaliation is met.

Next, the prisoner must prove he suffered some "adverse action." Rauser, 241 F.3d at 333. Action is adverse if it "'was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights.'" Id. (quoting Allah, 229 F.3d at 225). The test for adverse action is objective, not subjective, and whether the plaintiff was actually deterred by the defendant's retaliatory acts is not dispositive. See Citizens for a Better Lawnside, Inc. v. Bryant, Civ. No. 05-4286, 2007 WL 1557479, at *5-6 (D.N.J. May 24, 2007).

If the person satisfies the first two elements, he must then prove a causal link between his constitutionally protected conduct and the adverse action. Rauser, 241 F.3d at 333. The causation element consists of a burden-shifting framework. First, the prisoner must prove his constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. Id. (citing Mt. Healthy

15

City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1988)). In proving that his constitutionally protected conduct was a substantial or motivating factor, the plaintiff may present direct evidence of the defendant's motive, although this is not essential. The prisoner may rely on circumstantial evidence, such as "suggestive temporal proximity" between the protected conduct and the adverse action. Rauser, 241 F.3d at 334 (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)). However, temporal proximity is insufficient "when the temporal relationship is not 'unusually suggestive.'" Farrell, 206 F.3d at 280 (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 503 (3d Cir. 1997)). In the absence of unusually suggestive timing, the plaintiff may point to evidence of a retaliatory animus or intervening antagonism, see Kachmar v. SunGuard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); Alexander v. Forr, Civ. A. No. 3:CV-04-0370, 2006 WL 2796412, at *21 (M.D. Pa. Sept. 27, 2006), or inconsistent reasons offered by the prison official to justify the adverse action. See E.E.O.C. v. L.B. Foster Co., 123 F.3d 746, 753 (3d Cir. 1997).

If the prisoner proves that his constitutionally protected conduct was a substantial or motivating factor for the adverse action, the defendants may prevail if they prove by a preponderance of the evidence "that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Rauser, 241 F.3d at 334.

The court will now evaluate the evidence in the record in light of these principles. First, it is well established that "[a]

16

defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior. . . ." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). There exists no dispute of fact that Defendants Kelchner, Shaffer and Chambers were not involved in the decision to transfer Plaintiff and, as such, are entitled to summary judgment. This is first supported by the evidentiary materials submitted by Defendants. With regard to Superintendent Kelchner, the SMU Referral Form reveals that he was not involved in the recommendation or the final decision to transfer Plaintiff to the SMU. (Doc. 99, Shaffer Decl. ¶ 4 and Ex. A.) Plaintiff even acknowledges that Kelchner's only involvement was in denying his appeal of the grievance related to the transfer. (Id., Pl. Dep. at 39.) There is also no dispute of fact that neither Shaffer nor Chambers were involved in the decision to transfer as it was Defendant Beard who approved the final decision. (Doc. 99, Shaffer Decl. ¶ 3,4; Chambers Decl. ¶ 3; Doc. 1, Compl., Ex., Interrog. Resp. 7.) Thus, summary judgment is warranted in favor of these Defendants.

With regard to the retaliation analysis as to the remaining Defendants, it is unnecessary to resolve whether Plaintiff's confinement in the SMU constitutes adverse action because the record reveals no issue of fact as to whether Plaintiff's filing of the federal lawsuit was "a substantial or motivating factor" in Defendants' decision to transfer Plaintiff to the SMU. Clearly, timing will not establish the causal link between the federal lawsuit and Plaintiff's transfer to the SMU. The lawsuit was filed on July

17

12, 2005, two months prior to Plaintiff's transfer. (Doc. 99, Pl. Dep. at 14, 16; Pl. Dep. Ex. 1.) Plaintiff does come forth with undisputed evidence that Defendants Nish, Klopotoski and DelRosso were all named in his earlier federal lawsuit, and that Klopotoski and DelRosso were also members of the PRC on November 9, 2005 that informed him he was on the list to be transferred. However, this alone does not establish that they were impartial or possessed a retaliatory motive - - particularly in light of the overwhelming undisputed evidence of legitimate penological reasons for transferring Plaintiff to the SMU.

The record is full of support for the decision to transfer Plaintiff to an SMU. In his deposition, Plaintiff admits to seven (7) misconducts while in the RHU at SCI-Waymart which included offenses of threatening an employee or their family, using abusive, obscene or inappropriate language, assault and refusing to obey an order. (Doc. 99, Pl. Dep. at 14-15.) He further admits to being told by RHU staff about his bad attitude toward authority and argumentative nature, and that if his behavior did not change, he would be sent to the SMU. (Id. at 16, 19 and 24.) Plaintiff does not dispute the unsatisfactory PRC reports that cite to his poor behavior which included being argumentative, loud and belligerent. (Id. at 26.) Plaintiff's own testimony along with the misconduct and PRC reports and declarations contained in the record reveal no issues of fact with regard to whether Defendants would have made the same decision to transfer Plaintiff to the SMU absent his filing of the federal lawsuit in this court. (Doc. 99, Pl. Dep. Exs. 1 and 2, Misconduct and PRC Reports.)

18

Because no disputed issue of fact exists with regard to the establishment of a causal connection, Defendants are entitled to summary judgment on the retaliation claim.

Based on the foregoing, Plaintiff's motion for summary judgment will be denied and Defendants' cross-motion for summary judgment will be granted.

### C. Outstanding Motions

Also pending in this action are two (2) additional motions filed by Plaintiff. The first is a Motion to Expedite consideration of the summary judgment motions (Doc. 107). Clearly, this motion is now moot. The other motion is one for compensatory sanctions wherein Plaintiff requests a court order directing Defendants to remove him from the SMU and to pay $35.00 for each day they cause him to be confined in the SMU. (Doc. 113). For the reasons previously stated in this Memorandum, the motion will be denied. An appropriate Order follows.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM MEEKINS, | : |
| | : |
| Plaintiff | : |
| v. | : |
| | : CIVIL NO. 3:CV-06-290 |
| | : |
| JEFFERY BEARD, et al., | : (Judge Kosik) |
| | : |
| Defendants | : |

## ORDER

**NOW, THIS 5th DAY OF MARCH, 2008,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Plaintiff's motion for summary judgment (Doc. 59) is **denied.**

2. Defendants' motion for summary judgment (Doc. 96) is **granted.**

3. Plaintiff's motion to expedite (Doc. 107) is **denied as moot.**

4. Plaintiff's motion for compensatory sanctions (Doc. 113) is **denied.**

5. The Clerk of Court is directed to enter judgment against Plaintiff and in favor of all Defendants and to mark this matter closed.

*s/EDWIN M. KOSIK*
United States District Judge